EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Arturo M. Alfonso Brú<br>        Recurrido<br><br>                v.<br><br>Trane Export, Inc.<br>        Peticionaria | Certiorari<br><br>2001 TSPR 129<br><br>154 DPR \_\_\_\_ |

Número del Caso: CC-2000-929


Fecha: 20/septiembre/2001


Tribunal de Circuito de Apelaciones:
                        Circuito Regional II


Juez Ponente:
                        Hon. Zaida Hernández Torres

Abogados de la Parte Peticionaria:
                        Lcdo. Radamés A. Torruella
                        Lcda. Maggie Correa Avilés
                        Lcda. Katherine González Valentín

Abogado de la Parte Recurrida:
                        Lcdo. Miguel A. Maza



Materia: Reclamación de Indemnización por Despido



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Arturo M. Alfonso Brú

    Recurrido

        v.

                          CC-2000-929

Trane Export, Inc.

    Peticionaria

Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODÓN

San Juan, Puerto Rico, a 20 de septiembre de 2001

I

En 1964, el Sr. Arturo M. Alfonso Brú (en adelante Sr. Alfonso o recurrido), comenzó a trabajar para la empresa Trane Company o "Jacques Dreyfuss of P.R.". Para el año 1974, Trane nombró al Sr. Alfonso Gerente de Oficina para el área del Caribe. Posteriormente Trane Company cambió su nombre a Trane Export, Inc. (en adelante Trane).[1]

Según se alega en la querella, el Sr. Alfonso no tenía un ingreso fijo determinado. El recurrido era compensado con un salario básico, más (a) el 100% de las ganancias netas de todas las comisiones recibidas por ventas en la oficina de San Juan, después de haberse pagado los gastos operacionales y (b) el 30% de la ganancia neta antes de los impuestos de las ganancias que producían los departamentos de piezas, servicios y controles

---

[1] La información relacionada en este párrafo y los dos (2) siguientes constituye un resumen de los hechos según éstos surgen de las alegaciones del recurrido en la querella y de Trane en su contestación. Esto debido a que en este caso no se ha celebrado vista evidenciaria alguna ante el tribunal, ni obra en el expediente algún informe de conferencia con antelación al juicio en el cual se hayan estimado como probados o se hayan estipulado hechos. Así, la relación de hechos que se expone en nada prejuzga

automáticos. En 1980, esta fórmula fue modificada de manera que el 30% de ganancia devengada de los departamentos de precios, servicios y controles automáticos se mantenía hasta alcanzar la meta de ganancia presupuestada, y el exceso de ganancias sobre esa meta se dividía en un 70% para el Sr. Alfonso y un 30% para Trane.

A partir del año 1990, Trane implantó un nuevo sistema de precios para Puerto Rico, del cual se le envió una copia revisada al Sr. Alfonso. Posteriormente, durante el año 1993, hubo varias reuniones entre los oficiales de Trane y el Sr. Alfonso en referencia a cambios y reestructuración del sistema mediante el cual se había estado compensado al recurrido hasta ese entonces. Estas conversaciones culminaron en un nuevo contrato de empleo que no llenó las expectativas del Sr. Alfonso. Finalmente, el 12 de enero de 1994, el recurrido cesó sus labores con Trane.[2]

El **24 de diciembre de 1996**, el Sr. Alfonso presentó una querella contra su patrono y aquí peticionario, alegando despido injustificado bajo la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. § 185, et seq., y discrimen por edad y origen nacional en violación a la Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. § 146, et seq. La querella se presentó al amparo del procedimiento sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. § 3118 et seq (en adelante Ley 2). El Sr. Alfonso reclamó beneficios por salarios dejados de percibir en la cantidad de $ 2,400,000.00. Trane contestó la querella el 27 de febrero de 1997, negando la mayor parte de las alegaciones hechas por el Sr. Alfonso.

Aunque esta querella se presentó al amparo del procedimiento sumario de la Ley 2, que como se sabe, establece unos términos expeditos para la tramitación de las reclamaciones labores,[3] la peticionaria Trane compareció

---

los hechos que en su día el tribunal pueda encontrar probados o que las partes decidan controvertir o estipular.

[2] El recurrido alegó en la querella que fue despedido ese día. En su contestación a la querella, Trane alegó que el Sr. Alfonso no fue despedido, sino que renunció voluntariamente.

[3] Véase 32 L.P.R.A. § 3120. La querella deberá ser contestada dentro de los diez (10) días de notificada, si ésta se hiciere en el distrito judicial donde se promueve la acción, y dentro de quince (15) días en los demás casos. En caso de interesar una prórroga a estos términos, la parte

al tribunal por primera vez mediante contestación a la querella, el día **27 de febrero de 1997**, o sea, **a más de dos (2) meses de haberse presentado la reclamación ante el tribunal de instancia**. No surge del expediente que Trane hubiese solicitado prórroga alguna para contestar la querella. Tampoco surge del expediente que el Sr. Alfonso haya solicitado que se anotara la rebeldía por esta aparente comparecencia inoportuna de Trane, ni que el tribunal *motu proprio* hubiese dictado una orden a esos efectos.

Así las cosas, una vez trabada la controversia, ambas partes se involucraron en un complicado descubrimiento de prueba, consistente mayormente en interrogatorios, producción de documentos y deposiciones.[4] Finalmente, las partes se reunieron el 28 de octubre de 1999 en conferencia con antelación al juicio.

Luego de la conferencia, en una reunión con la juez a cargo del caso Hon. Jeannette Tomasini Gómez, para auscultar la posibilidad de una transacción, salió a relucir el hecho de que el Sr. Alfonso había reportado en sus planillas de contribución sobre ingresos para los años en controversia, un ingreso mucho menor al reclamado en la querella en concepto de salarios. El Sr. Alfonso explicó que había sido objeto de una investigación por parte del Departamento de Hacienda (en adelante Hacienda), y que ese proceso culminó con la radicación de planillas de contribuciones sobre ingresos enmendadas para los años 1989 al 1994. El tribunal de instancia entonces emitió una orden verbal para que el querellante produjera, en un término de diez (10) días, copia de dichas planillas enmendadas para los años 1989 a 1994, y documentos relacionados con los cambios o enmiendas a dichas planillas, inclusive los relacionados a los

---

querellada debe radicar una moción a esos efectos, dentro del término que establece la Ley 2 para contestar la querella.

[4] Esta información surge de las minutas preparadas en el tribunal de instancia en conferencia con antelación al juicio. Al parecer, el trámite del descubrimiento de prueba en este litigio ha sido uno bastante accidentado. Se han presentado solicitudes de prórroga para contestar interrogatorios, se han solicitado documentos que aparentemente se encontraban fuera de Puerto Rico, y se han hecho alegaciones de la necesidad de cierta documentación para deponer a algunos testigos, como por ejemplo, el perito economista de la parte querellada.

acuerdos habidos entre el Sr. Alfonso y Hacienda. En ese momento, el Sr. Alfonso no se opuso a la orden.

De la minuta de dicha reunión surge no obstante, que el Sr. Alfonso produjo en evidencia algunos documentos, incluyendo copia de las notificaciones de deficiencia contributiva hechas por Hacienda para los años 1988 al 1990, y copia del documento donde constaban los ingresos que el recurrido acordó con Hacienda. Estos documentos pusieron de manifiesto que los ingresos reportados por el Sr. Alfonso "se[guían] siendo mucho más bajos que lo que se alega en la demanda."[5]

Así las cosas, la querellada le solicitó al Sr. Alfonso, mediante carta de 23 de noviembre de 1999, que produjera varios documentos, incluyendo:

a. Notificaciones de deficiencia del Departamento de Hacienda y/o cualquier documento preliminar para los años 1988 al 1994, según aplique, y documentos de los que surjan los conceptos para las deficiencias notificadas por el Departamento de Hacienda.

b. Documentos relacionados con apelaciones instadas por el querellante.

c. Documentos relacionados con cualquier auditoria realizada por un oficial del Departamento de Hacienda para los años en cuestión.

d. Documentos relacionados con vistas administrativas o de otra índole celebradas como resultado de la auditoria de los ingresos reportados por el querellante y/o recursos de apelación instados por el querellante.

Durante los días 29 de noviembre y 1 de diciembre de 1999 se le tomó una deposición al Sr. Alfonso. Ese día, al parecer, el querellante produjo sólo algunos de los documentos solicitados. De su testimonio surgió que en una vista administrativa en apelación ante Hacienda, **el Sr. Alfonso argumentó y convenció al foro administrativo de que alrededor de $100,000 por año reportados por él en sus planillas eran pérdidas no tributables, y no ingresos tributables**.[6]

Así las cosas, no habiendo recibido Trane todos los documentos solicitados, y ante las alegaciones inconsistentes del Sr. Alfonso con

---

[5] Véase minuta de 10 de noviembre de 1999, pág. 2.

relación a sus ingresos, el 30 de noviembre de 1999, Trane envió al Sr. Alfonso un formulario de autorización para que éste permitiera a Trane obtener los documentos solicitados directamente de Hacienda. El Sr. Alfonso no contestó dicha comunicación, y el 15 de diciembre de 1999, Trane presentó ante el tribunal de instancia una "Moción para que se ordene descubrir lo solicitado", en la cual solicitó que el tribunal emitiera una orden para descubrir todos los documentos relacionados con el expediente del Sr. Alfonso en Hacienda para los años 1980–1994, o, en la alternativa, que el Sr. Alfonso proveyese una autorización para solicitar los documentos directamente a Hacienda. Trane reprodujo dicha moción ante el foro de instancia el 25 de enero de 2000, y solicitó el expediente relacionado a la investigación en Hacienda, con la correspondiente autorización para obtener la transcripción de la vista administrativa ante dicha agencia, y el expediente de la auditoria realizada por Hacienda al Sr. Alfonso para los años 1980–1987 y 1987 a 1994, conjuntamente con las planillas de contribución sobre ingresos del Sr. Alfonso para los años 1980 a 1987.

El 26 de enero de 2000 el tribunal de instancia le ordenó al Sr. Alfonso someter autorización para obtener los documentos que obraban en el expediente de Hacienda dentro del término de dos (2) días, so pena de sanciones económicas. Esta orden fue notificada por teléfono el 27 de enero, y posteriormente notificada por escrito, el 9 de febrero de 2000.

El Sr. Alfonso no cumplió con la orden telefónica del tribunal de instancia, por lo que el 2 de febrero de 2000 Trane presentó una moción solicitando que se eliminaran de la querella las alegaciones de índole económica. El 4 de febrero de 2000, en Sr. Alfonso presentó una "Moción de reconsideración y ratificando solicitud de orden protectora", en la cual solicitó reconsideración de la orden requiriéndole que autorizara a Trane a obtener documentos del Departamento de Hacienda, y solicitó además, que el tribunal emitiera una orden protectora para evitar un descubrimiento de prueba irrelevante y opresivo por parte de Trane.

---

[6] La transcripción de esta deposición no obra en el expediente del caso, no obstante, el Sr. Alfonso no ha negado en momento alguno estas

El tribunal de instancia no atendió la reconsideración, por lo que el 24 de febrero de 2000 el Sr. Alfonso presentó una moción en auxilio de jurisdicción y solicitud de certiorari ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). El foro apelativo dictó una resolución el 31 de mayo de 2000, en la cual revocó la orden del tribunal de instancia que ordenaba al Sr. Alfonso descubrir lo solicitado o autorizar a Trane a obtener la información directamente de Hacienda. Concluyó el Tribunal de Circuito que el requerimiento de Trane era excesivo e irrelevante a tenor con la Regla 23 de Procedimiento Civil, 32 L.P.R.A. Ap. III, y estaba en contra de las limitaciones al descubrimiento de prueba que establece la Ley 2.

Declarada sin lugar la moción de reconsideración presentada por Trane, ésta recurrió ante nos mediante certiorari de 6 de noviembre de 2000. Alegó esencialmente que el Tribunal de Circuito erró al calificar el descubrimiento solicitado como opresivo por ser la información requerida una solicitud excesiva. El 14 de diciembre de 2000 expedimos el recurso. Ambas partes han presentado sus alegatos y con el beneficio de sus argumentos resolvemos.

II

Impera en nuestro sistema judicial un esquema de descubrimiento de prueba extrajudicial que fomenta una mayor flexibilidad y cooperación entre las partes.[7] El descubrimiento de prueba es "la médula del esfuerzo de destruir de una vez y para siempre la deportiva teoría de la justicia". Lluch v. España Service Sta., 117 D.P.R. 729, 743 (1986) (citas omitidas). Un sistema liberal de descubrimiento de prueba antes del juicio facilita la tramitación de los pleitos y evita inconvenientes, sorpresas e injusticias que surgen cuando las partes ignoran hasta el día de la vista

---

aseveraciones.

[7]    José A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo I. Ed. 2000, pág. 468.

las cuestiones y los hechos que en realidad son objeto del litigio. Sierra v. Tribunal Superior, 81 D.P.R. 554, 560 (1959).

La Regla 23 de Procedimiento Civil regula el descubrimiento prueba en la litigación civil. Sólo hay dos limitaciones fundamentales al descubrimiento: (1) no puede descubrirse materia privilegiada, según los privilegios que se reconocen en las Reglas de Evidencia, y (2) la materia a descubrirse tiene que ser pertinente al asunto en controversia.[8] Como regla general, el concepto de pertinencia para propósitos del descubrimiento de prueba, aunque impreciso, debe ser interpretado en términos amplios. General Electric v. Concessionaries, Inc., 118 D.P.R. 32, 40 (1986). Así, para que una materia pueda ser objeto de descubrimiento, basta con que exista una posibilidad razonable de relación con el asunto en controversia. Rodríguez v. Scotiabank de P.R., 113 D.P.R. 210, 212 (1982).

No obstante esto, hemos establecido que el descubrimiento de prueba no es ilimitado. General Electric, supra. El tribunal puede limitar el alcance y los mecanismos de descubrimiento de prueba a utilizarse, siempre que con ello se adelante la solución de controversias de forma rápida, justa y económica. Las reglas establecen el mecanismo de la orden protectora, con el propósito de proteger a la parte o persona con relación a la cual se utiliza el descubrimiento de "hostigamiento, perturbación u opresión, así como cualquier gasto o molestia indebida".[9]

En el contexto del descubrimiento de prueba en relación con información económica, hemos resuelto que, como regla general, no procede este tipo de descubrimiento contra los demandados en casos de daños y perjuicios, y tampoco cuando la razón del descubrimiento es revelar la capacidad económica de un deudor para satisfacer la sentencia que en su día pueda recaer contra éste. Por último, cuando la condición económica de la parte no es un elemento de la reclamación, tampoco procede ese tipo de descubrimiento. General Electric v Concessionaries, supra, págs. 40-42.

_____

[8] Véase Regla 23.1(a).
[9] Regla 23.2 de Procedimiento Civil, 23 L.P.R.A. Ap. III.

En cuanto a la información económica contenida en la planilla de contribución sobre ingresos, hemos determinado que, aunque ésta no constituye materia privilegiada, tampoco está sujeta a descubrimiento indiscriminado, sino que sólo debe hacerse disponible la información pertinente. Rodríguez v. Scotiabank de P.R., supra, pág. 216. El promovente de la requisición de planillas de contribución sobre ingresos tiene el peso de demostrar la pertinencia y necesidad de tal descubrimiento.[10]

En el contexto específico de las reclamaciones laborales instadas bajo la Ley 2, el descubrimiento de prueba permitido está limitado por disposición específica de la Ley, que a estos efectos dispone lo siguiente:

> ...[E]n relación con los medios de descubrimientos de prueba anteriores al juicio autorizados por las Reglas de Procedimiento Civil, la parte querellada no podrá usarlos para obtener información que debe figurar en las constancias, nóminas, jornales, y demás récords que los patronos vienen obligados a conservar...; y que ninguna de las partes podrá someter más de un interrogatorio o deposición ni podrá tomar una deposición a la otra parte después que le haya sometido un interrogatorio, ni someterle un interrogatorio después que le haya tomado una deposición, excepto que medien circunstancias excepcionales que a juicio del tribunal justifiquen la concesión de otro interrogatorio u otra deposición. No se permitirá la toma de deposición a los testigos sin la autorización del tribunal, previa determinación de la necesidad de utilizar dicho procedimiento. 32 L.P.R.A. § 3120.

Así pues, el descubrimiento de prueba en pleitos instados bajo la Ley 2 está estrictamente limitado, ya que "el legislador pretendió asegurar que mediante ningún mecanismo pudiera desvirtuarse el carácter sumario y de rápida resolución que impregna todo el procedimiento provisto en la Ley". Dávila v. Antilles Shipping, Inc., Op. de 12 de febrero de 1999, 99 JTS 10, 538.

De acuerdo a estos principios hemos resuelto que debe limitarse el descubrimiento por parte del patrono cuando éste tenga en sus propios récords toda la información requerida de los obreros, o podían adquirirla fácilmente mediante una investigación adecuada de un pequeño número de empleados. Sierra v. Tribunal Superior, 81 D.P.R. 554, 563.

---

[10] Cuevas Segarra, op. cit., pág. 496.

No obstante, estas limitaciones al descubrimiento de prueba no son aplicables automáticamente a todos los casos bajo la Ley 2. Por ejemplo, hemos resuelto que "[c]uando existe una controversia *bona fide* sobre si los demandados han sido o no empleados de la demandada [patrono], y ésta, por creer que no lo han sido, no lleva constancias, nóminas, listas de jornales y demás récords que los patronos vienen obligados a conservar... no puede aplicarse la disposición de la Ley que prohíbe a los patronos solicitar información, mediante interrogatorio, que ellos deben llevar y tener en su poder". <u>Dorado Beach Corp.</u> v. <u>Tribunal Superior</u>, 92 D.P.R. 610, 618 (1965).

A la luz de estos principios procedemos a analizar el caso de marras.

III

La controversia que desembocó en este recurso es sencilla: el recurrido, Sr. Alfonso, reclama de su patrono, Trane Export, una compensación en salarios dejados de percibir que sobrepasa los dos (2) millones de dólares. Para llegar a este cálculo el Sr. Alfonso reclamó tener un ingreso anual que resulta ser mucho mayor al informado al Departamento de Hacienda en sus planillas de contribución sobre ingresos. Esta discrepancia se sostiene aún después del Sr. Alfonso someter e inclusive, producir en evidencia para los efectos de este litigio, copia del documento donde constaban los ingresos que el recurrido acordó con Hacienda. Es por esta razón que Trane solicitó descubrir los demás documentos relacionados con la investigación llevada a cabo por Hacienda. El Tribunal de Circuito consideró que dicho descubrimiento era excesivo de acuerdo a la Regla 23.2 de Procedimiento Civil, y por haberse instado el caso bajo la Ley 2, el descubrimiento estaba aún más limitado. Erró el foro apelativo al así resolver.

Una mera lectura del trámite procesal habido en este caso nos convence de que no estamos ante un procedimiento sumario bajo la Ley 2. Tanto las partes como el propio tribunal han tratado este litigio como un procedimiento ordinario. La querella se presentó en **diciembre de 1996,**

o sea, hace aproximadamente cinco (5) años. La naturaleza de la reclamación y las circunstancias del empleo hicieron necesario un extenso descubrimiento de prueba el cual aún no ha concluido. No cabe duda que la naturaleza de la querella y el transcurso de un periodo de tiempo tan extenso sin que ni siquiera se haya terminado el descubrimiento de prueba y celebrado una vista en su fondo hace absurda la conclusión de que estamos ante un procedimiento sumario al cual le aplican las limitaciones que establece la Ley 2 al descubrimiento de prueba.

Además, desde los comienzos del caso, tanto las partes como el tribunal han tramitado este litigio de acuerdo al procedimiento civil ordinario. Trane contestó la querella más de dos (2) meses después de haberse presentado ésta ante el tribunal. Aunque no surge del expediente la fecha en que la querella fue notificada a Trane, el hecho de que hayan transcurrido más de sesenta (60) días desde que se presentó la querella hasta la comparecencia de Trane, sin que conste en el expediente solicitud alguna de prórroga de parte de Trane, o petición de anotación de rebeldía por parte del Sr. Alfonso, abonan a la conclusión de que, desde un principio, las partes no mostraron un interés genuino en que su caso se tramitase bajo el procedimiento de la Ley 2.

Por último, la petición de certiorari del Sr. Alfonso ante el Tribunal de Circuito fue presentada el **24 de febrero de 2000**. Para esa fecha ya estaba en vigor, desde el **12 de febrero de 1999**, la norma establecida por este Tribunal en Dávila v. Antilles Shipping, Inc., supra, de que las decisiones interlocutorias de los tribunales de instancia en casos que se ventilan bajo la Ley 2 no son revisables mediante certiorari excepto cuando éstas sean dictadas sin jurisdicción o cuando los fines de la justicia lo requieran. Así, de haberse considerado este caso un procedimiento sumario, la determinación del tribunal de instancia de que procedía el descubrimiento de prueba solicitado por Trane no era revisable ante el Tribunal de Circuito, salvo una determinación específica de dicho tribunal de que los fines de la justicia así lo requerían. El Tribunal de Circuito ni siquiera consideró esta norma al acoger el recurso presentado por el Sr. Alfonso, y Trane tampoco

alegó que la misma era aplicable al caso de marras. Por todas estas razones, consideramos que las limitaciones al descubrimiento de prueba por parte del patrono que establece la Ley 2 no son de aplicación a este caso, ya que para todos los efectos, y por su naturaleza, nos enfrentamos a un procedimiento ordinario.

Pasemos ahora a evaluar el descubrimiento solicitado por Trane, de acuerdo a las Reglas de Procedimiento Civil aplicables.

IV

El Tribunal de Circuito consideró que la información solicitada por Trane constituía un descubrimiento de prueba opresivo y excesivo de acuerdo a la Regla 23.2 de Procedimiento Civil y su jurisprudencia interpretativa. No tiene razón.

Consideramos que el descubrimiento solicitado por Trane está justificado. Los trámites habidos en este caso demuestran que existe una controversia genuina con relación a cuánto ascendían realmente los ingresos del recurrido, o sea, cuál era su ingreso anual. Esta determinación es medular al caso, ya que en base a esta cantidad es que se podrá determinar a cuánto realmente debe ascender la compensación económica, si alguna, que el Sr. Alfonso tenga derecho a recibir en concepto de salarios dejados de percibir.

Ante las alegaciones inconsistentes del recurrido, estimamos que Trane necesita tener acceso a toda la documentación que sobre este particular consta en los récords de Hacienda, sin que tal descubrimiento de prueba pueda considerarse excesivo. La transcripción del testimonio del Sr. Alfonso en la vista en apelación ante Hacienda puede arrojar luz en este caso sobre lo que el mismo Sr. Alfonso consideraba parte de sus ingresos, además de ofrecer fundamentos en los cuales Hacienda basó su determinación final de deficiencia en las planillas del recurrido. En cuanto a la producción de las planillas para los años 1980 a 1987, aunque éste no es el periodo para el cual se sometieron planillas enmendadas, consideramos que es pertinente

dicha información, dado a que lo declarado por el Sr. Alfonso como ingreso durante esos años ayudará a esclarecer, no solamente el ingreso anterior promedio del recurrido, sino también el complicado sistema que se utilizaba para determinar la compensación del recurrido.

El descubrimiento solicitado tampoco resulta opresivo para el Sr. Alfonso, ni su producción constituye una carga onerosa para éste. Se trata de documentos que ya obran en un expediente administrativo, los cuales con una simple autorización estarán disponibles para que la peticionaria pueda examinarlos. En cuanto a la invasión a la intimidad que alega el Sr. Alfonso, consideramos que este planteamiento no tiene fundamento en los hechos, ya que nuestro ordenamiento provee alternativas para salvaguardar información confidencial que surja de dichos documentos, tales como la producción o examen en cámara o sobre lacrado y sujeto a manejo confidencial del expediente de Hacienda sobre la investigación, la vista en apelación y documentos relacionados.

Por último en este caso no están presentes ninguna de las circunstancias en las cuales no procede que se descubra información económica. Al contrario, los hechos del caso revelan que el Sr. Alfonso, debido a las inconsistencias en sus alegaciones en el foro judicial y el administrativo, ha puesto en controversia precisamente cuáles son sus ingresos y la naturaleza de éstos, a los fines de recibir compensación por parte de su patrono. Esto es particularmente pertinente al caso ya que durante la investigación de la cual el Sr. Alfonso fue objeto por parte de Hacienda, éste al parecer argumentó que ciertas partidas reportadas en sus planillas consistían en pérdidas y no ingresos. Así, se justifica que Trane tenga acceso a la información que obra en el expediente de esa investigación para determinar precisamente qué partidas de las reclamadas ahora por el Sr. Alfonso a Trane fueron efectivamente consideradas como ingreso por el Departamento de Hacienda.[11]

_____

[11] Deseamos señalar que en su alegato ante nos, el Sr. Alfonso señaló que Trane le solicitó, como parte del descubrimiento de prueba, presentar en evidencia las planillas de contribución sobre ingresos de sus padres, quienes aparentemente realizaban trabajos de limpieza en la oficina de San

En conclusión, erró el Tribunal de Circuito al revocar al tribunal de instancia, y no permitir el descubrimiento de prueba solicitado por Trane. La información requerida es pertinente, y no atenta contra el derecho a la intimidad del recurrido, ni resulta en una carga demasiado onerosa para éste. En un caso de la naturaleza del de autos, donde el sistema de compensación es uno complejo y donde aparentemente parte de la información necesaria para su cómputo está bajo el control del querellante, aquí recurrido, no permitir el descubrimiento solicitado podría inducir al tribunal a error al hacer el cómputo de la compensación a otorgar al Sr. Alfonso por salarios dejados de percibir.  La incongruencia entre la cantidad reportada a Hacienda y la reclamada hay que resolverla para evitar una injusticia contra el patrono.

Aclaramos, no obstante, que nuestra conclusión no pretende coartar en forma alguna el derecho que pueda tener el Sr. Alfonso a ser compensado bajo las leyes laborales que dispone nuestro ordenamiento en protección del obrero.  Lo único que perseguimos es que en todo litigio haya la más franca y abierta cooperación entre las partes, de forma tal que se traigan ante el tribunal todos los hechos necesarios para que éste pueda resolver la controversia según proceda en derecho y así alcanzar los fines de la justicia de manera equitativa y balanceada para todos los involucrados.

Por los fundamentos que anteceden, procede revocar la sentencia dictada por el Tribunal de Circuito de Apelaciones.  Devolvemos el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.


Miriam Naveira de Rodón
Juez Asociada

---

Juan donde laboraba el recurrido.  Examinados los documentos en el expediente, consta que Trane solicitó esos documentos al Sr. Alfonso mediante carta de 4 de enero de 2000.  No obstante, en las dos (2) mociones sobre descubrimiento de prueba radicadas por Trane ante el Tribunal, ésta no solicitó que se ordenara al recurrido la producción de las planillas de contribución sobre ingresos de sus padres.  Entendemos que el descubrimiento de prueba autorizado por el tribunal de instancia al declarar con lugar la moción sobre descubrimiento comprende los documentos que Trane efectivamente solicitó en la moción.  Por no estar ante nosotros la solicitud de producción de planillas de contribución sobre ingresos de los padres del Sr. Alfonso, no pasamos juicio sobre este particular.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Arturo M. Alfonso Brú

    Recurrido


      v.                           CC-2000-929

Trane Export, Inc.

    Peticionaria


SENTENCIA


San Juan, Puerto Rico a 20 de septiembre de 2001


     Por los fundamentos expuestos en la Opinión que antecede, se revoca el dictamen del Tribunal de Circuito de Apelaciones y se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.

     Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita.  Los Jueces Asociados señores Rebollo López y Rivera Pérez no intervinieron.


                 Isabel Llompart Zeno
            Secretaria del Tribunal Supremo